Number 191150, Alejandro Diaz Alarcon versus Michelle Flandes Marceau. Yes, may I take your calls? I am Antonio Marica, I am a career host in UNO on behalf of Alcoran. In this case, Alejandro Diaz Alarcon, here with me is Antonio Flandes Quijano, who is part of our legal team. This is a case under the Hague Abduction Convention where it is undisputed that Flandes unlawfully returned Michelle within the meaning of the Convention. This being the case, the Convention establishes a strong presumption in favour of return. But the lower courts decide to deny return based on the exceptions involved by Flandes as provided by Article 13 of the Convention. As for the grave risk defence, the lower court rests in part to apply this defence in the U.S. Department of State legal analysis, which sees sexual abuse as an intolerable situation. But the same legal analysis states, and I am quoting, the discretionary aspect of Article 13 is especially important because of the potential for brainwashing of the child by the alleged abductor. In this case, we strongly contest the finding on the sexual abuse question. But for the purposes of our argumentation today, our main contention is that the district could err because based on the undisputed evidence in the whole record, the lower court's determination to deny return was not based on the high and strict standards of the applicable law in this case. Here's the line of reasoning that stands as your principal impediment, at least on one of the grounds in my view. There was an expert witness who testified that there had been abuse and the child faced a risk upon return. There was no doubt or challenge to that. No, we contest that because our contention to that is that the only expert that used the device investigative and interview protocols and the criteria to assess the credibility of suspected abuse was Dr. Marcados. The evaluation of Dr. Roman, the purpose was not to assess the credibility but only to, as she testified, to see how the girl was at least at the moment. Let me put it this way. The district court found as fact that there was convincing evidence, clear and convincing evidence of a grave risk of harm. So we have to, whether we agree with that or not, we have to review it for abuse of discretion and clear error. Clear error because of the following reasons. And so the task it seems you face is to say that if you go through the record, you can't find in the record any adequate support for that conclusion by the district court judge so that it's clear error. That is correct based on the standards applied in this case. The standards applied in this case is that these exceptions have to be narrowly constructed, that the grave risk defense has to be proved by clear and convincing evidence, and the court shall consider in considering the article 13 defenses and shall take into account the information of the child's social background in his habitual residence in order to have a balanced record in which to make a determination to determine whether to do it or not. And also according to the jurisprudence of this secret, in the first case of Penelope versus McLeary, it says that the question under the grave risk defense is the effect of the return on the particular child in the case. And according to the undisputed evidence in the record, there will not be any effect in the child's return or that the child will return to an intolerable situation. But didn't one of the experts conclude that the child's reports were credible of abuse? Although Dr. Roman testified that she doesn't identify critical indicators of unreliable reporting, in this the same Dr. Roman testified that she does not assume a certain or proven narrative defense. And didn't the district court interview the child who herself reported in the district court found credible her reports of abuse? Yes. So how do you get around that? Because of the undisputed evidence in the record that shows that the child is brainwashed by Flanders to disqualify Diaz as her father. Sure. So your theory, which fits some of these cases, is that the parent who absconded from the country and took the child and didn't return improperly has convinced, or to use your word, brainwashed the child into believing this happened and that's what the district court heard. That's an argument you present in the district court. It didn't convince this judge. What is there in the record that makes it, there's no direct evidence of any brainwashing and the experts don't agree that there was. Why was the district court compelled to find that explained the child's testimony? Because the record reflects the following, that a social worker in Chile observed that the child was being brainwashed by Diaz. I'm missing the page 19 of appendix 1. But certainly the other expert didn't testify to that. Yes, but the social background of the child has to be taken into account. In this case, there is evidence from Chile that even Flanders has to be individually counseled and not manipulating or involving the child in the conflict with the parents. Also, from the child's statements during the different interviews, the child places memories of a violent and an ignorant father by influence of Flanders. For instance, the child was narrating in the interview of the district judge that Diaz would call always child and would always hit her mom when she was 1-2 years old. And then the district judge asked the child, how can you remember she was a child? And the child said, because her mom would tell me those stories. But the record reflects that Flanders told two different professionals in Chile that she only was a victim of psychological violence. Another example is when the child told Dr. Mercado that Diaz was described in a very obscene way, not appropriate to a 10 years old girl. And she said that she was like that because one day he left her without food, without feeding. And then she said, that is what my mom says. She doesn't like to leave me victims. It reminds me of that. Do I read the record correctly? You did not ask for any expedited review in this case? Excuse me? Did you ask for expedited review of this appeal? Yes. Yes. Another reason of our main contention is that the lower court erred by not giving the appropriate way to unexpected evidence that shows Flanders' intention to stay in Puerto Rico previous to alleged disclosure of the sexual abuse. The record shows that since early 2014, Flanders had the intention to move to Puerto Rico to live a better life. Also, there is a petition that Flanders filed before Chile to request authorization to move for a year to Puerto Rico. The reason given was because she had to rejoin her husband to return to Puerto Rico to complete his graduate studies. And because he had a job offer. Also, there is a dispute that Flanders was not allowed by the authorities to fly to Puerto Rico on the 26th because she doesn't have a return flight ticket. Also, it is unexpected that the Flanders enrolled the child for an entire school semester in the day after the child was enrolled by the court of Chile, and she did that before the alleged disclosure of the sexual abuse. Also, although Flanders alleged that she stayed to the sake of the child's safety and well-being, the record reflects that no sexual abuse was commissioned by Flanders shortly after the alleged disclosure. Also, the record reflects that the child was not receiving any treatment. Also, there is a dispute that Flanders provided three different versions of when or from where the child received treatment. And she ended up saying in her last version that she didn't even recall the name of the psychologist. Also, the record reflects that the girl in Puerto Rico doesn't have health care plans, has to attend four different schools, has extremely frontal abscesses, and is exposed to inadequate touching and nudity from Flanders and her husband. And as testified by Dr. Mercado, this is not adequate, this type of conduct, if there is a concern that a social abuse happened. And also, the other reason for a main contention is that the record thereby not giving the appropriate weight to the child's statements. The child said during the interview with the district judge, when asked about whether to return or not to Chile, the child said that she will return, but not to be with Diaz. And then later she said that she is afraid that Diaz will arm her. She obviously will return if it is to endure her extended family in Chile. She also says that a long time has passed, that she is no longer with Diaz, that she knows how to defend herself, and that she's been phased out. And also, when Dr. Romey was asked about the rape risk issue, what Dr. Romey testified is that she considered the risks extremely severe if the child has direct contact with Diaz. Because, I'm quoting, I don't know what in terms of his presence, because just talking about him, about experiences throughout these episodes. But then, as for what is pertinent in this kind of cases, she testified, the child feels, I'm quoting, feels very close to her mother's family, and she speaks very highly of Chile. What could be the effect of the child, if have direct contact with the father, is something that's generally called the custody case, and this is not custody case. What this is petitioning in this case is that the child is attempting to allow the course of Chile to make determinations of her best interest, and not only that, but reflects that the course of Chile will not make a determination in a responsible way. We don't have answers to the question. Thank you. Good morning, your honors. May it please the court, Stephen Law, secretary of court, together with Rafael Rodriguez-Rivera, for Michelle Flandes-Marcel. The hate convention generally favors the return of children, so that custody issues may be resolved by courts in the country for the true residence. However, there are exceptions that justify non-return. Whenever there is credible evidence of sexual abuse, particularly sexual abuse by a parent, U.S. government policy is weighted towards protection of the minor. That is what this case is about. It's about the safety and well-being of a 10-year-old girl who has consistently stated that she was sexually abused by her father. Is there any evidence or any reason to think that the Chilean courts aren't fully capable of dealing with this? In fact, the Chilean courts may have far more experience with disputes of this type than a U.S. district court judge. There is no evidence that they would be in a better position to deal with this. But is there any evidence that they wouldn't? Certainly here in the States, a family law court is, on average, probably going to be a lot more capable of handling one of these matters than would be a federal court because they see them every day. A federal court sees them once a year, maybe. So here, part of the hate convention, the underlying motivation is to create a disincentive for a parent who doesn't like the resolution of their family law court in their jurisdiction to flee to the U.S. and then take a second shot at it, particularly before a judge who has much less experience in dealing with it. So I come back to my question. Is there any reason to think that the Chilean courts weren't fully and equally as capable of making a determination as to how best to protect the child's interests? There is no evidence on the record of the inadequacy of Chilean courts on this issue. But the matter is that according to the hate convention and this circuit's case law, the federal court has an obligation to enter findings on the question of sexual abuse. But the court isn't required to allow the child to remain even after those findings are made. No, it is not. But given the grave nature of what is being alleged here, i.e. sexual abuse by a parent, as I already stated, the considerations are weighted towards the protection of the minor. So the deterrence effect that Your Honor mentioned doesn't really come into play in this case because as the record shows, Michelle Flanders has full custody of the child. She is not absconding because she received an unfavorable decision in Chilean family court. She had full custody, but she went to the airport the first time with a one-way ticket. Yes, Your Honor. But she had admitted that she was returning in three months. I mean, that was the agreed-upon plan by the parties. But there were visitation rights. Yes, yes. That's what she eliminated was the visitation rights. Exactly. And she had plenipotentiary. So when you say she got what she wanted from the courts, she really didn't quite. The Chilean courts thought the father should have visitation rights. Or at least the couple had so agreed. Yes, yes they did. And that was in fact the agreement that they had reached that they would communicate via telephone during those three months that she was here. And as the record shows, the child was the one who did not want to talk to her father anymore. And as a result of the events that transcribed after that was when the allegations of sexual abuse came to light. And as the district judge noted, it was when the child said she felt safe being in Puerto Rico away from what she perceived was her threat to talk about these allegations. Well, the court in Chile had found that there was insufficient evidence. I'm sorry, Your Honor? Hadn't the court in Chile made a determination that there was insufficient evidence to find that the father had engaged in any kind of inappropriate conduct towards the child? Not with regard to sexual abuse. That wasn't known at that time. But there were other allegations in Chile. Yes, there were. With response to physical abuse and violent treatment in general of the child. And the court found that there was insufficient evidence to support those allegations. It did. But the court here gave credibility to the minor statements to the opposite effect. That she was the victim of violence and she had been threatened after the incident of sexual abuse. That if she were to talk to anybody, her father would kill her and anybody she talked to. To counsel's point, there is credible evidence in the record of sexual abuse. And that sustains the district court's interpretation. On clear error review, there's a plausible interpretation. It cannot be discarded merely because there is some conflicting evidence in the record. Well, this is a situation where the credible evidence is solely the child's allegations. And there's no other corroborating evidence. And I'm not saying that there need be. But it certainly goes to the issue of brainwashing. Since the only thing we have to look towards is what the child said. And a child who's under the constant supervision and custody of the mother. Yes, well, Your Honor, it was the opinion of the magistrate judge who interviewed her. And it was also adopted by the district judge after interviewing the child. That there was no evidence of undue influence. That what she was professing were her genuine feelings and fears and opinions. If there is nothing else, Your Honor, we will rest on our brief. Okay. Thank you. Well, in this case, Your Honor, if there is no further questions, we will leave our time. Okay, thank you. Thank you.